Submitted July 30, reversed and remanded October 16, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRIAN DAVID ROELLE,
*Defendant-Appellant.*

Tillamook County Circuit Court
106338; A148785

312 P3d 555

Peter Gartlan, Chief Defender, and Louis R. Miles, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant appeals a judgment of conviction for strangulation, ORS 163.187, based on conduct involving his ex-girlfriend. On appeal, defendant assigns error to the trial court's ruling admitting evidence of his prior criminal conviction for assault against another former girlfriend, AM. We conclude that the admission of the prior bad acts evidence under OEC 404(3) is error apparent on the face of the record, *State v. Jones*, 258 Or App 1, 6, 308 P3d 347 (2013), and exercise our discretion to review and remedy that error. Therefore, we reverse and remand.

Defendant was charged with two counts of strangulation of his ex-girlfriend and the couple's four-year-old son, C. The charges involved allegations that defendant had placed his hands around C's neck, choking him and impeding his breathing. Additionally, defendant allegedly shoved the complainant against the wall, held her there by placing his forearm on her neck, rendering her unable to breathe, and then grabbed the complainant's neck and choked her, at which point she was again unable to breathe.

In a pre-trial motion *in limine*, the state argued that the prior bad acts evidence pertaining to defendant's prior assault conviction satisfied the test for admissibility as set forth in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986).[1] In response to the state's motion, defendant argued that the evidence was inadmissible because it did not satisfy the *Johns* criteria. The trial court ruled that the evidence was admissible for the "limited purpose of knowledge, the *mens rea* of the crime," and that a limiting instruction would be necessary.

---

[1] Under *Johns*, the relevance of prior bad acts evidence to prove intent is determined based on the following factors:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?"

301 Or at 555-56.

At trial, the state presented testimony from the complainant, the complainant's mother, and AM. The complainant testified that she and defendant had attended a family reunion at a hotel in Rockaway Beach. She stated that she found defendant alone in the couple's shared hotel room with his hands around C's neck and that C did not appear to be breathing. She testified that defendant placed his forearm on her neck, pushed her against a wall, choked her, and yelled at her. However, neither she nor C had sustained any marks, redness, or bruising from the incident. She also testified that she had had a conversation in which she told defendant's sister that she was afraid of defendant.

Complainant's mother testified that, on the morning of the incident, she saw the complainant crying and trying to get herself under control, but did not see any bruising, marks, or redness on either the complainant or C.

AM testified that she had been in a romantic relationship with defendant for over a year. One evening, the two began to argue. Defendant yelled profanities at AM and threatened to kill her. AM testified that defendant then threw her up against the wall and began choking her. AM stated that she was unable to breathe, and, as she tried to fight back, defendant threw her to the floor, put his knee on her neck, and choked her. After disabling her phones so that she was unable to call for help, defendant left the apartment. Neighbors called the police, and AM reported the incident when the officers came to her apartment. Defendant pleaded guilty to assault in the fourth degree in 2004 as a result of that incident.

Pursuant to the pretrial rulings, the state offered and the court admitted both AM's testimony and the judgment of conviction for the assault charge to prove defendant's intent. The trial court gave the following precautionary instruction after AM's testimony:

> "[AM]'s testimony is only admissible and relevant as to the knowledge element of the crimes charged. You may not consider her testimony for any other purpose. More specifically, you may not use her testimony to infer that the defendant has a propensity or tendency to commit the charged crimes."

Defendant's theory of the case was that the incident with the complainant had not occurred. Defendant presented testimony of his sister, aunt, mother, and stepfather. Each witness testified that, on the morning of the alleged strangulation, neither the complainant nor C appeared to have been crying or upset, and had no visible marks, bruising, or redness. Defendant's sister contradicted the complainant's testimony, testifying that the complainant did not tell her that she feared defendant.

The jury convicted defendant on one count of strangulation relating to the complainant. On appeal, defendant assigns error to the trial court's admission of evidence of defendant's prior conviction for assault.

In *State v. Leistiko*, 352 Or 172, 282 P3d 857 (2012), which was decided after defendant's opening brief was filed, the defendant was charged with first-degree rape by means of forcible compulsion of three different complainants based on three separate incidents. The defendant's theory was that he had consensual sexual intercourse with each complainant, each of whom had advertised "erotic services" on Craigslist. The state offered evidence from a fourth woman who had advertised "erotic services" on Craigslist, who testified that the defendant had forced her to have sexual intercourse with him. The defendant objected to admission of that evidence, and the trial court overruled the defendant's objection. The evidence was admitted, and the defendant was convicted. We affirmed the defendant's conviction, and the Supreme Court reversed, holding that the evidence was not admissible to prove the defendant's alleged intent unless "the *act itself is assumed to be done*,—either because (as usually) it is conceded, or because the jury is instructed not to consider the evidence from this point of view until they find the act to have been done and are proceeding to determine the intent." *Id.* at 184 (quoting John Henry Wigmore, 2 Evidence § 302, 245 (Chadbourne rev 1979)) (emphasis in Wigmore).

In *State v. Pitt*, 352 Or 566, 578, 293 P3d 1002 (2012), the defendant was charged with two counts of first-degree unlawful sexual penetration and two counts of first-degree sexual abuse. The trial court denied defendant's motion to exclude evidence of prior uncharged sexual misconduct. The

defendant argued that the evidence was not relevant to prove intent or absence of mistake, "because his defense was that the charged acts never occurred and, if the acts did occur, he did not commit the acts." *Id.* at 578. The uncharged misconduct evidence was admitted in the defendant's trial, and he was subsequently convicted. *Id.* at 571. On review of the Court of Appeals decision affirming the trial court's admission of the evidence, the Supreme Court reversed, concluding:

> "Before trial, and in the absence of a stipulation by defendant[,] * * * evidence of defendant's uncharged misconduct * * * was only conditionally relevant. That is, the uncharged misconduct evidence might have become relevant if certain conditions had occurred concerning the trial court record. First, in the absence of defendant's stipulation, the state would have to introduce evidence at trial sufficient to permit the factfinder to find beyond a reasonable doubt that [the charged act occurred] as charged. Second, the court would have to instruct the jury that it could not consider the evidence of defendant's uncharged misconduct for any purpose unless it first found as a fact that defendant had [committed the charged act]. If the record demonstrated that those conditions were satisfied, then the court could allow the state to offer and the jury to consider the evidence of defendant's uncharged conduct for the purpose of deciding whether defendant had committed the charged acts intentionally."

*Id.* at 580-81 (footnote omitted).

We applied *Leistiko* and *Pitt* in *Jones,* which the Supreme Court had remanded to us for reconsideration. In *Jones,* the defendant was charged with assaulting, strangling, sodomizing, and menacing his wife over a period of several weeks. 258 Or App at 2. The state asserted that the defendant injured his wife in a rage because he believed that his wife had slept with other people. The defendant's wife testified that the defendant intended to make her less attractive to other men by injuring her. The defendant asserted that someone else had inflicted the injuries on his wife. The state sought to introduce prior bad acts evidence of defendant's alleged assault of a former girlfriend, wherein the defendant allegedly threatened to cut and kill her, threw things at her, hit her with his fists and other objects, choked

her, cut her clothing, and twisted her nipples with a pair of pliers. *Id.* The former girlfriend, JM, testified that the defendant stated that his purpose in threatening to cut her was to make her less attractive. *Id.* We originally affirmed the defendant's conviction, *State v. Jones*, 246 Or App 412, 266 P3d 151 (2011), and the Oregon Supreme Court vacated and remanded that decision for reconsideration in light of *Leistiko. State v. Jones*, 353 Or 208, 297 P3d 480 (2013). On remand, we concluded that a trial court's admission of prior bad acts evidence under OEC 404(3) to prove a defendant's intent—in a case in which the defendant disputed committing the charged acts and the jury had not been instructed that it must first find that the defendant had committed the charged acts before it could consider the prior bad acts evidence to determine intent—was properly reviewable as plain error, in light of *Leistiko*, because "plain error" is determined by the law as it exists at the time the appeal is decided. *Jones*, 258 Or App at 5-6 (discussing *Leistiko*, 352 Or at 174; *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002)); *see also State v. Hutton*, 258 Or App 806, 816, 817-18, 311 P3d 909 (2013) (holding that it is error for a trial court to admit evidence of prior bad acts without properly conditioning the jury's use of that evidence).

We now apply the foregoing principles to this case. Here, as in *Leistiko, Pitt, Jones*, and *Hutton*, defendant disputed that he had engaged in the charged acts. After a hearing on a pretrial motion, the trial court ruled that the evidence of defendant's assault conviction was admissible for the purpose of proving the intent element of the crime charged, *i.e.*, the "limited purpose of knowledge, the *mens rea* of the crime." Although in this case, unlike in *Leistiko* and the cases following it, the court gave the jury a limiting instruction, that instruction did not meet the criteria set forth in *Leistiko—viz.*, it did not limit the jury's consideration of the evidence on the issue of intent to after they had first found that defendant had committed the charged acts. *Leistiko*, 352 Or at 185; *see Jones*, 258 Or App at 8 (describing the risk that, without a proper limiting instruction, the jury will consider the prior bad acts for improper purposes). Thus, the admission of the evidence without the appropriate limiting instruction was plain error. *Id.*

If the error meets the requirements of "plain error," we must determine if it is appropriate to exercise our discretion to correct the error, taking into consideration the interests of the parties, the nature of the case, the gravity of the error, the ends of justice, and whether the policies behind the general rules of preservation have been served. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

We conclude that the gravity of the error weighs in favor of correcting the error, as does the nature of the case. Considering the lack of physical evidence, the inflammatory nature of the prior bad acts evidence, and the nature of the testimony presented, without the appropriate constraints on the use of that evidence—as per *Leistiko* and its progeny—the jury easily could have considered the details of defendant's prior assault against AM to conclude that defendant committed the charged acts or that defendant had a propensity to commit domestic violence against his partners, in violation of OEC 404(3). In short, based on the totality of the circumstances, we conclude that the admission of that evidence likely affected the jury's verdict. *State v. Davis*, 336 Or 19, 34-35, 77 P3d 1111 (2003). Therefore, the error was not harmless and, given the gravity of the error and the nature of the case, we exercise our discretion to remedy the error.

Reversed and remanded.