Submitted December 20, 2013, affirmed May 6, petition for review denied
October 22, 2015 (358 Or 145)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GEORGE ARDIZZONE,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF110047; A150918

349 P3d 597

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant. George Ardizzone, filed the supplemental brief *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and De Muniz, Senior Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment convicting him of solicitation to commit aggravated murder. The trial court admitted "other acts" evidence, over his objection, about his earlier conviction for soliciting the murder of the same victim. In defendant's first three assignments of error, he contends that the other acts evidence was inadmissible to prove his intent to solicit the commission of aggravated murder because he never stipulated to the charged conduct and the trial court failed to instruct the jury that it should not consider the evidence unless it first determined that the charged conduct had occurred. Alternatively, he argues that, even if the evidence was admissible under state evidentiary principles, the admission of the other acts evidence deprived him of a fair trial, violating the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We conclude that defendant's first argument is not preserved, and we do not engage in "plain error" review because defendant does not request it. We reject defendant's second argument because the trial court did not abuse its discretion when it concluded that the probative value of the evidence was not outweighed by the potential for unfair prejudice. In his fourth through sixth assignments of error, defendant challenges Oregon's use of nonunanimous jury verdicts. We reject those assignments without further discussion. *State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129, *rev den*, 345 Or 415 (2008), *cert den*, 558 US 815 (2009). Accordingly, we affirm.[1]

A jury found defendant guilty, so we recite the facts in the light most favorable to the state. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008). Defendant and the victim began a relationship in 2008 that ended on bad terms and resulted in the victim suing defendant for monetary damages. In late 2009, Deputy Sheriff Burkeen investigated a report by a confidential informant that defendant had solicited the abduction and murder of

---

[1] Defendant filed a supplemental *pro se* brief raising a challenge to the trial court's denial of his request to appoint substitute counsel. We reject that challenge without published discussion.

the victim earlier that year. Burkeen's investigation revealed evidence that defendant had discussed with the informant, in cryptic terms, "the package," meeting places, and monetary payment. Defendant paid the informant $13,000, and a search of defendant's car revealed a gun with the serial number removed, a large black cloth bag, and a roll of black garbage bags. Based on that and other evidence uncovered by Burkeen, a jury convicted defendant of attempted murder, attempted aggravated murder, solicitation to commit murder, and additional crimes.

After his conviction, defendant was incarcerated at Two Rivers Correctional Institution (TRCI), and was placed in a cell with Barnes. At TRCI, defendant discussed the victim and her lawsuit against him with Barnes on many occasions. He also showed Barnes financial account statements that purported to show money in an account held jointly by defendant and the victim. Barnes feigned interest in arranging for the victim's murder in exchange for $1,000, and defendant provided him with a list of possible addresses where the victim might be found. According to Barnes, defendant agreed to pay him to act as the "middleman" with $200 in "canteen purchases" at TRCI and $800 that defendant's son would deposit into Barnes's account. Defendant wrote a letter to his son that instructed him to deposit $800 of defendant's money into Barnes's account. When Barnes realized that defendant was serious about having the victim killed, he contacted authorities at TRCI and requested favorable treatment in exchange for cooperating in the investigation of defendant. Barnes wore a wire and recorded defendant saying that he wanted Barnes to "take [the victim] out," which Barnes understood to mean that defendant wanted the victim killed.

An Oregon State Police detective questioned defendant, who explained that he was paying Barnes for legal work at the prison and that he had not arranged to kill the victim. He claimed that any statements about killing the victim were made in jest, and that Barnes was trying to set him up.

Before trial, the state filed a motion *in limine* seeking a ruling as to the admissibility of evidence of defendant's prior acts. The state argued that evidence of defendant's

2009 conviction for soliciting the murder of the victim was relevant to show defendant's intent to solicit the murder of the same victim in this case. In particular, the state sought to offer (1) the interrogation of defendant in which he discusses facts surrounding his prior convictions, (2) testimony from a detective regarding his investigation in the prior case, and (3) documentation of defendant's prior convictions. The state contended that under OEC 404(3) and *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), the evidence was relevant to show intent.[2] The state acknowledged that the

---

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *Johns*, the Supreme Court identified factors that a court should consider in determining whether evidence of prior misconduct is probative of a defendant's state of mind as opposed to doing nothing more than establishing a defendant's propensity for engaging in criminal conduct:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?

"(6) If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?"

301 Or at 555-56.

Subsequently, we held that the legislature's enactment of OEC 404(4) in 1997 "precludes OEC 403 balancing of probative value against, among other things, danger of undue prejudice" except as required by the state or federal constitutions. *State v. Arnold*, 262 Or App 22, 26 n 2, 324 P3d 538 (2014). And, accordingly, OEC 404(4) "effectively removed [the sixth factor] from the *Johns* analysis. *State v. Jones*, 246 Or App 412, 418, 266 P3d 151 (2011).

In *State v. Williams*, 357 Or 1, 15, 346 P3d 455 (2015), the Supreme Court recently held that OEC 404(4) supercedes OEC 404(3), and that relevant evidence admitted under OEC 404(4) is subject to balancing under OEC 403. Thus, our prior treatment of how the enactment of OEC 404(4) affected the analysis under *Johns* was wrong. Further, *Williams* represents a fundamental change in the analytical paradigm of the admissibility of "other acts" evidence. Nevertheless, given the issues in this case, and the manner in which we resolve those issues, we need not address how *Williams* has shifted that paradigm.

evidence was "highly prejudicial" to defendant, but argued that under "*Johns* balancing" the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, and thus, the evidence was admissible.

At the hearing, defendant conceded that the evidence was relevant to prove intent, stating that "I think it probably is credible and it's relevant, but I think the [crux] of the situation is that it's just so potentially extremely prejudicial, that to present that to the jury is stepping over the line and the defendant would not have a fair jury."

The trial court examined each "*Johns* factor" and ruled that the other acts evidence was admissible, stating that the evidence was relevant to prove defendant's intent. The court explained that, as to prejudice, there was no question that the evidence was prejudicial, but only in the sense that it tended to show defendant's guilt, and while there was some danger that it could distract the jury from the trial issues, the probative value of the evidence in showing intent was not substantially outweighed by the potential of unfair prejudice to defendant.

At trial, defendant generally renewed his objection to the other acts evidence and asked the court to instruct the jury not to consider that evidence to prove defendant's propensity to commit the charged crime. The court gave that limiting instruction to the jury during the trial, and again before the jury began deliberations. The jury convicted defendant of solicitation to commit aggravated murder.

On appeal, defendant challenges the admissibility of the other acts evidence. He advances two arguments as to why the court erred. First, he argues that, under *State v. Leistiko*, 352 Or 172, 282 P3d 857 (2012), and *State v. Pitt*, 352 Or 566, 293 P3d 1002 (2012), the other acts evidence was inadmissible to prove his intent because he did not stipulate to the charged conduct and the trial court failed to instruct the jury that it should not consider the other acts evidence unless it first determined that the charged conduct had occurred. Second, he contends that the trial court incorrectly concluded that the probative value of the evidence was not substantially outweighed by the potential for unfair prejudice.

We begin with defendant's first argument, which relies on *Leistiko* and *Pitt*. Both cases dealt with the admission of other acts evidence to prove intent, and both were decided after defendant's trial in this case.

In *Leistiko*, the defendant had been charged with raping three victims. To prove that each of the three had not consented to defendant's sexual advances, the state offered evidence that defendant had forcibly compelled a fourth woman to engage in sexual intercourse with him. 352 Or at 174. The Supreme Court examined the admissibility of that evidence under OEC 404(3) in order to determine whether the fourth victim's testimony was relevant for some purpose other than to show that the defendant had a propensity to forcibly compel women to engage in sexual intercourse. The court explained that, under *Johns* and *State v. Gailey*, 301 Or 563, 725 P2d 328 (1986), "where the occurrence of the act remained at issue, this court held that evidence of the prior crime was not admissible to prove intent." 352 Or at 184. The court explained that, in *Johns*, the court had reasoned that, under the doctrine of chances, "'the more often [a] defendant performs the *actus reus*, the smaller is the likelihood that the defendant acted with an innocent state of mind.'" *Id.* at 182 (quoting *Johns*, 301 Or at 552). Accordingly, it "depends on the proposition that multiple instances of similar conduct are unlikely to occur accidentally." *Id.* at 182. As applied to the defendant in *Leistiko*, the court concluded that the fourth woman's testimony was inadmissible to prove intent because the defendant had not conceded that he had forcibly compelled any of the three women to engage in intercourse with him, and the trial court had not admitted the uncharged misconduct evidence as conditionally relevant nor instructed the jurors to consider that evidence on the issue of intent only if they first found that defendant had forcibly compelled the women to engage in intercourse with him. *Id.* at 185-86. Because neither of those conditions was met, the admission of the evidence presented an "unacceptable risk that the uncharged misconduct evidence is being admitted to prove the act, not the defendant's mental state."[3] *Id.* at 186.

---

[3] A discussion of *Pitt* is unnecessary to our analysis.

On appeal, defendant contends that neither condition was met in this case; that is, defendant never stipulated to the charged conduct and the trial court failed to give the jury a "conditional relevance" instruction. Accordingly, defendant asserts that admission of the other acts evidence was erroneous, and the error was prejudicial. The state counters that defendant failed to preserve that issue because he conceded that the evidence was relevant to prove intent and only argued that its admission was unfairly prejudicial. As to the merits, the state contends that, although it was not discussed at trial, the evidence was admissible under OEC 404(4) and, alternatively, that defendant's reliance on *Leistiko* is misplaced because defendant did not contest that the charged acts occurred and the state introduced sufficient evidence to prove that the acts occurred, so the only open question at trial was whether defendant intended to solicit the murder of the victim, as opposed to defendant's theory that his conduct could be innocently explained.

We agree that defendant failed to preserve the issue that he now raises on appeal. To preserve a claim of error, the party must provide the trial court with an explanation of his objection that is specific enough to afford the court an opportunity to analyze any alleged error. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Preservation policies are prudential and pragmatic in nature. *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008). "Whether a party adequately presented a contention to the trial court varies depending on the nature of the claim or argument." *State v. Wirfs*, 250 Or App 269, 273, 281 P3d 616, *rev den*, 352 Or 378 (2012). Here, defendant conceded that the other acts evidence was relevant to prove intent, and he only objected to admission of the evidence on the basis that the evidence would be unfairly prejudicial to him. The contention that he now makes on appeal—that the evidence was only conditionally relevant and that the jury should have been so instructed—is entirely different from the argument he made to the trial court.

We note that we have reviewed challenges brought under *Leistiko* as "plain error." *See, e.g., State v. Jones*, 258 Or App 1, 308 P3d 347 (2013) (conducting plain error review, and exercising discretion to correct the error in a case similar

to *Leistiko*); *cf. State v. Gensler*, 266 Or App 1, 11, 337 P3d 890 (2014), *rev den*, 356 Or 690 (2015) (plain error review unavailable when "the application of the principle elucidated in *Leistiko* \* \* \* is subject to reasonable dispute"). However, we ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so because "it is incumbent upon the appellant to explain to us why an error satisfies the requisites of plain error and, further, why we should exercise our discretion to correct that error." *State v. Tilden*, 252 Or App 581, 589, 288 P3d 567 (2012); *see also State v. Bigelow*, 238 Or App 344, 348, 242 P3d 719 (2010), *rev den*, 350 Or 130 (2011), and *State v. Hammond*, 218 Or App 574, 583-84, 180 P3d 137 (2008). Defendant does not request plain error review in this case, and we therefore do not undertake that analysis.

That leaves defendant's second argument—that the admission of the other acts evidence violated his due process rights. The state contends that defendant also failed to preserve that issue because the only mention of a "fair trial" was in the context of the trial court's evaluation of the *Johns* factors. We agree with the state that, to the extent that defendant is making a due process argument that goes beyond his objection at trial that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, that issue is unpreserved.

To the extent that defendant is reprising the argument that he made to the trial court, we review the trial court's ultimate determination as to whether the evidence was unfairly prejudicial for an abuse of discretion. *State v. Shaw*, 338 Or 586, 614-15, 113 P3d 898 (2005). Here, defendant contends that the other acts evidence was "minimally relevant" to his intent in this case, drawing distinctions between defendant's conduct in each case, and he argues that the primary relevance to intent relied on a propensity inference that, because defendant did it before, his intent in this case was the same.[4] Without extended discussion, we conclude that the trial court did not abuse its discretion

---

[4] As noted, defendant conceded at trial that the evidence was relevant to prove intent, and did not advance any argument as to the "minimal" relevance of the evidence. He focused solely on prejudice.

when it concluded that the probative value of the other acts evidence was not substantially outweighed by the potential for unfair prejudice. That conclusion was within the range of legally permissible outcomes available to the trial court.

Affirmed.