No. 368 April 23, 2025 129

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of H. M. R.-C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. R.-C.,
*Appellant.*

Lincoln County Circuit Court
23JU01656; A185311

Marcia L. Buckley, Judge.

Submitted  March 20, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Elena C. Stross, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Stacy M. Chaffin, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and Walters, Senior Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Mother appeals from a juvenile court judgment that changed the permanency plan for her child H from reunification to adoption. In mother's two assignments of error, she argues that the juvenile court erred in ruling that the Department of Human Services (DHS) made reasonable efforts to assist mother and thus reunify the family. As we will explain, the trial court did not err in concluding that DHS made reasonable efforts to reunify the family. In turn, the trial court did not err by changing the permanency plan from reunification to adoption. We thus affirm.

Absent *de novo* review, which mother does not seek, "we review the juvenile court's legal conclusions for errors of law but are bound by its findings of historical fact if there is any evidence in the record to support them." *Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012). "Where findings on disputed issues of fact are not made but there is evidence supporting more than one possible factual conclusion, we presume that the juvenile court decided the facts consistently with its ultimate legal conclusion." *Id*. at 345. "Ultimately, we review the facts found by the juvenile court to determine whether they are supported by any evidence and then to determine if, as a matter of law, those facts provide a basis for the juvenile court's change of the permanency plan * * *." *Id*. Because a full recitation of the facts would not benefit the parties, the bar, or the bench, we recount only those facts necessary to give context to our ruling.

The court established jurisdiction over H, who was five years old at the time of the permanency hearing, on five bases.[1] The juvenile court ordered supervised visitation

---

[1] The juvenile court took jurisdiction on the following bases:

"The mother's substance abuse interferes with her ability to safely parent the child[;]

"The mother has another child for * * * whom she is not a parental resource and the conditions or circumstances that were the basis for the mother not having custody of that child, which include the following: mental health conditions, have not changed or been ameliorated, and interfere with her ability to safely parent the child[;]

"The mother's pattern of erratic and volatile behavior interferes with her ability to safely parent the child[;]

with mother and H. In a subsequent visit, mother became abusive to DHS personnel to the point of police intervention. Combined with an incident of H becoming physically ill when told she would be visiting mother, and upon recommendation of H's therapist, the juvenile court suspended visitation. Thereafter, H's therapist did not prepare H for a return to visitation with mother, and no further visitation occurred in the year leading up to the permanency hearing. The court reaffirmed the suspension of visitation just three days prior to the permanency hearing.

Mother engaged in some services while she was briefly incarcerated on an unrelated issue, but afterwards failed to engage in DHS services or rebuffed DHS entirely. Mother did not provide an accurate address to DHS. When caseworkers attempted to find and engage with mother in the community, she again refused. Mother was offered referrals by DHS for drug treatment, drug tests, and mentorship; however, she did not follow through with those services. Mother did engage in a psychological exam, but did not engage in other recommended mental health treatment. After a contested hearing, which mother did not attend, the court changed the permanency plan from reunification to adoption. Mother timely appealed.

When the permanency plan at the time of a permanency hearing is reunification, the juvenile court is authorized to change the plan away from reunification only if DHS proves that "(1) it made reasonable efforts to make it possible for the child to be reunified with his or her parent" and "(2) notwithstanding those efforts, the parent's progress was insufficient to make reunification possible." *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017); ORS 419B.476(2)(a). "The juvenile court's determinations whether DHS's efforts were reasonable and the parent's progress was sufficient are legal conclusions that we review for errors of law." *Dept. of Human Services v. G. N.*, 263 Or App 287, 294, 328 P3d 728, *rev den*, 356 Or 638 (2014).

---

"The mother's residential instability and chaotic lifestyle interferes with her ability to safely parent the child[; and]

"The mother does not understand the basic needs of her child and lacks parenting skills necessary to safely parent the child."

Mother argues that DHS failed to take reasonable efforts by not doing more to facilitate visits between H and mother, or otherwise preparing H for visits to resume. But the juvenile court had suspended visits for cause, and the record indicates that mother had made little effort to subsequently modify her behavior despite being offered services to address the concerns. H's therapist indicated that mother would need to address a range of personal issues before visitation would be safe for H. There was sufficient evidence in the record that mother then continued to rebuff DHS assistance. The trial court did not err by concluding that the non-preparation of H for visits with mother did not constitute a lack of reasonable efforts.

Mother also argues that DHS failed to make reasonable efforts to reunite the family because soon after the court ordered a halt to visitation, the resource parent obtained a stalking protective order against mother. Mother points to testimony from H's psychiatrist that in order to safely reunite mother and H after a period of no contact, it would be best for the resource parent to participate. Mother thus argues that a lack of further visitation was a foregone conclusion, because mother was legally forbidden from being in contact with the resource parent. But the stalking protective order does not affect the outcome, because the end to visitation meant that the resource parent did not need to assist with visitation. Mother's failure to engage with services, such that visitation would again be a possibility, negates any issues that may have arisen in trying to coordinate visits. There was legally sufficient evidence for the trial court to conclude that DHS engaged in reasonable efforts.

Mother's argument that DHS did not provide reasonable efforts with regards to finding housing is unpreserved, and she does not request plain error review. We therefore do not reach it. *See State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) (we "ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so").

Affirmed.